**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia A. Polk, | No. CV-19-04705-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Patricia A. Polk's ("Claimant") appeal from the Social Security Commissioner's ("Commissioner") denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. (Doc. 1). The appeal is fully briefed. (Doc. 15; Doc. 18; Doc. 21). The Court now rules on the appeal.

**I.    BACKGROUND**

Claimant filed an application for disability insurance benefits on August 4, 2015. (Doc. 11-6 at 2–3 (application); Doc. 11-4 at 18). Claimant's application was denied at the initial stage, (*id.* at 14), upon reconsideration, (*id.* at 30), and by the Administrative Law Judge ("ALJ") after a hearing, (Doc. 11-3 at 27). Her request for review of the ALJ's decision was denied by the Appeals Council. (*Id.* at 2). Claimant then sought review in this Court. (Doc. 1).

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). If she suffers from a medically determinable physical

or mental impairment that prevents her from engaging "in any substantial gainful activity," the claimant is disabled. *Id.* § 423(d)(1)–(2). The Social Security Administration has created a five-step process for an ALJ to determine whether the claimant is disabled. 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

The ALJ denied Claimant social security benefits because he determined that, despite her limitations, she could do unskilled work at all exertional levels, and was therefore not disabled within the meaning of the Social Security Act. (Doc. 11-3 at 21, 26–27). At step one, he determined that she was not engaged in substantial gainful activity. (*Id.* at 19). At step two, he found Claimant's sleep apnea, obesity, and unspecified cognitive disorder to be non-severe, but proceeded to step three because he found her seizures, depression, and anxiety to be severe impairments. (*Id.*).

At step three, the ALJ found that Claimant's impairments did not meet or medically equal an impairment listed "in 20 CFR Part 404, Subpart P, Appendix 1," and so proceeded to the residual functional capacity ("RFC") determination. (*Id.* at 20–26). In determining Claimant's RFC, the ALJ discounted her subjective symptom testimony and the opinions of her treating providers, which collectively indicated multiple marked mental limitations. (*Id.* at 21–23 (symptom testimony); *id.* at 24–25 (medical source statements)). He relied instead on the opinions of state agency psychologists who opined that Claimant had only moderate limitations and was able to perform unskilled work. (Doc. 11-3 at 25–26 (citing Doc. 11-4 at 11–14, 27–28 (psychologist opinions))). The ALJ found that Claimant had the RFC to perform simple, unskilled work at all exertional levels, subject to some environmental limitations such as avoiding ladders and scaffolds. (Doc. 11-3 at 21).

At step four, the ALJ found that, because of her RFC for simple, unskilled work, Claimant could no longer perform her past relevant work as a registration clerk, which is a semi-skilled position, and proceeded to step five. (*Id.* at 26). At step five, considering Claimant's age, education, and RFC for unskilled work, and using the Medical-Vocational Guidelines as a framework, the ALJ found that Claimant could perform jobs that exist in significant numbers in the national economy and was therefore not disabled. (*Id.* at 26–27).

## II. LEGAL STANDARD

An ALJ's decision to deny benefits may be reversed only where "it is not supported by substantial evidence or it is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). Where the evidence admits of more than one rational interpretation the court will uphold the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A reviewing court must consider "the record as a whole, weighing both the evidence that supports and detracts from the [ALJ's] conclusion," *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992), and "may not affirm simply by isolating a 'specific quantum of supporting evidence,'" *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

The court may affirm the ALJ's decision only on grounds upon which the ALJ actually relied. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). But reviewing courts "are not deprived of [their] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. Thus, even where an ALJ's reasoning is less than ideally clear, the court "must uphold [the decision] if the [ALJ's] path may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (internal quotation marks and citation omitted).

## III. ANALYSIS

Claimant argues that the ALJ erred in improperly weighing the opinion of Claimant's treating psychiatrist, in improperly evaluating Claimant's residual functional capacity, and in declining to use vocational expert testimony in determining whether Claimant could make an adjustment to other work. (Doc. 15). The Court takes each issue in turn.

### a. Weight of Opinion Evidence

Claimant first contends that the ALJ erred in giving little weight to the opinion of Claimant's treating provider, Dr. Lauro Amezcua-Patino. (Doc. 15 at 12). In general, the

opinion of a treating source is entitled to more weight than that of an examining source, which in turn is entitled to more weight than that of a non-examining source. 20 C.F.R. § 404.1527(c)(1)–(2); *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).[1] But a treating physician's opinion is not necessarily conclusive. *Thomas* v. *Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). If a treating physician's opinion is contradicted by another physician's opinion, an ALJ may reject it "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (citation omitted). The ALJ did not err in discounting Dr. Amezcua-Patino's opinion, which was contradicted by the opinions of the state agency psychologists. (*Compare* Doc. 11-10 at 156 (asserting nine marked mental limitations), *with* Doc. 11-4 at 11–13, 27–28 (asserting no marked mental limitations)). Therefore, the ALJ only needed specific and legitimate reasons, supported by substantial evidence, to discount Dr. Amezcua-Patino's opinion. *Bayliss*, 427 F.3d at 1216; *Bortolamedi v. Colvin*, No. 217CV01473JADBNW, 2019 WL 4454510, at *4 (D. Nev. Aug. 27, 2019), *report and recommendation adopted*, No. 217CV01473JADBNW, 2019 WL 4450428 (D. Nev. Sept. 17, 2019); *see also* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

The ALJ had specific and legitimate reasons to discount Dr. Amezcua-Patino's opinion. The ALJ described the results of Dr. Amezcua-Patino's mental status examinations of Claimant and found that "his treatment records are inconsistent with his opinion." (Doc. 11-3 at 22–24). In fact, mental status exams conducted by Dr. Amezcua-

---

[1] Psychologists, such as Dr. Amezcua-Patino, are considered acceptable medical sources for the purposes of weighing opinion evidence. *See* 20 C.F.R. § 404.1513(a)(2) (2017) (including licensed or certified psychologists as an "acceptable medical source"); *McAllister v. Sullivan*, 888 F.2d 599, 602 n.3 (9th Cir. 1989) (treating a psychologist as a "physician").

- 4 -

Patino's office described Claimant as having "no signs of cognitive difficulty" as well as intact memory, judgment, and insight on no fewer than eighteen occasions between August 2013 and September 2016. (Doc. 11-9 at 6–8, 10–11, 13–14, 16, 18–20, 21–22, 24–26, 27–29, 31–33, 36–39, 41–44, 188–90, 192–94; Doc. 11-10 at 74–76, 78–80, 82–84, 148–50; Doc. 11-11 at 14–16). Yet, Dr. Amezcua-Patino described Claimant in his opinion as having "difficulty thinking or concentrating" with moderate limitations in "[r]emembering locations and work-like procedures" and "understand[ing] and remember[ing] one-to-two step instructions" and marked limitations in "understand[ing] and remember[ing] detailed instructions," "mak[ing] simple work-related decisions," and "carry[ing] out detailed instructions." (Doc. 11-10 at 154, 156). Indeed, these limitations do not appear anywhere in Dr. Amezcua-Patino's treatment notes. (*See, e.g.*, Doc. 11-8 at 99–100 (stating "exam reveal[ed] no mental status abnormalities")). Instead, the treatment notes suggest that Claimant's condition is improving. (Doc. 11-10 at 76 ("[S]tability seems to be happening as evidenced by a decreasing intensity of symptoms.")). The inconsistency between Dr. Amezcua-Patino's opinion and treatment notes and the inconsistency between that opinion and the objective medical evidence, including the mental status exams, constitute specific and legitimate reasons to discount the opinion. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009); *Tommasetti*, 533 F.3d at 1041; *Hogan v. Apfel*, 239 F.3d 958, 961 (9th Cir. 2001).

The ALJ's finding is supported by substantial evidence, including the multitude of times Dr. Amezcua-Patino's office described Claimant as having "no signs of cognitive difficulty" as well as intact memory, judgment, and insight. *Valentine*, 574 F.3d at 692–93. The duty to resolve conflicts based on the medical evidence is left to the ALJ, and this Court must uphold the ALJ's determination "where the evidence is susceptible to more than one rational interpretation." *Hutcheson v. Comm'r of Soc. Sec.*, No. 1:16-CV-00366-SKO, 2017 WL 3839956, at *7 (E.D. Cal. Sept. 1, 2017) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)). It was the ALJ's responsibility to determine if there was a conflict between Dr. Amezcua-Patino's treatment notes and opinion, and if so, to

resolve that conflict. *See id.* The ALJ's findings of inconsistency between the opinion and both Dr. Amezcua-Patino's treatment notes and the objective medical evidence constitute specific and legitimate reasons to discount his opinion.

The ALJ did not "cherry-pick" from the record in rejecting Dr. Amezcua-Patino's opinion, as Claimant contends, (Doc. 15 at 20), but instead pointed to a significant number of different times over several years that the treatment notes indicated "no signs of cognitive difficulty." Additionally, consistent exam results showing "no signs of cognitive difficulty" over the course of more than three years cannot simply be described as "temporary improvement," as Claimant asserts. (Doc. 15 at 18). In support of her argument, Claimant cites to Dr. Amezcua-Patino's reliance on Claimant's subjective symptoms, which were discredited. (*Id.* at 13–15). In discrediting these symptoms, the ALJ found Claimant's "statements concerning [their] intensity, persistence and limiting effects" to be "not entirely consistent with the medical evidence and other evidence in the record." (Doc. 11-3 at 21–22). Claimant has not asserted that the ALJ's credibility determination was erroneous, (*see* Doc. 1; Doc. 15; Doc. 21), and her discredited symptoms cannot support Dr. Amezcua-Patino's opinion, *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Indeed, the ALJ found that Claimant's daily activities, including caring for a young child, were inconsistent with the marked limitations Dr. Amezcua-Patino diagnosed. (*See* Doc. 11-3 at 22, 24). That finding also constitutes a specific and legitimate reason for discounting Dr. Amezcua-Patino's opinion. *See Lindquist v. Colvin*, 588 F. App'x 544, 546 (9th Cir. 2014).

Claimant argues that other medical opinions substantiate Dr. Amezcua-Patino's opinion. (Doc. 15 at 15–16). Claimant points to the opinions of Dr. Ruddy and PA Kiraly. (*Id.*). But Claimant does not specifically challenge the ALJ's decision to discount either Dr. Ruddy's opinion or PA Kiraly's opinion. (*See id.*). And though it appears that Claimant asserts that she has not conceded either issue, (Doc. 21 at 7), Claimant only makes passing reference to the ALJ's consideration of these opinions within her argument that the ALJ erred by discounting Dr. Amezcua-Patino's opinion, (Doc. 15 at 15–16).

Claimant did not properly raise any issue related to the weight the ALJ assigned the opinions of either Dr. Ruddy or PA Kiraly. (Doc. 15). Claimant's first assignment of error reads: "Whether the Administrative Law Judge Failed to Properly Evaluate the Opinion of [Claimant's] Treating Psychiatrist." (*Id.* at 1). The heading for that issue states: "The ALJ Failed to Properly Evaluate the Opinion of [Claimant's] Treating Psychiatrist, Dr. Amezcua-Patino." (*Id.* at 12). Any reference to Dr. Ruddy or PA Kiraly is related only to Claimant's assertion that their opinions support Dr. Amezcua-Patino's opinion. (*Id.* at 15–16).

The Court made clear that each parties' brief must include "[a] statement of the issue presented for review," and the Court warned that its review would be limited "only [to] issues which are argued specifically and distinctly in a party's opening brief." (Doc. 5 at 2–3 (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994)). As such, Claimant waived any challenge to the ALJ's decision to discredit the opinions of Dr. Ruddy or PA Kiraly as to Claimant's mental impairments. *See Matthew D. v. Comm'r of Soc. Sec.*, No. 2:19-CV-0015-TOR, 2019 WL 6617399, at *5 (E.D. Wash. Dec. 5, 2019); *see also Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding an allegation of error was "too undeveloped to be capable of assessment"). Accordingly, whether the discredited opinions of Dr. Ruddy or PA Kiraly support Dr. Amezcua-Patino's opinion is irrelevant to whether the ALJ properly discredited Dr. Amezcua-Patino's opinion. Nonetheless, even if the Court reaches the merits of the ALJ's decision to discredit the mental-impairment opinions of Dr. Ruddy or PA Kiraly, the Court will affirm as there was substantial evidence supporting the ALJ's decision to discredit each source's opinion.

First, Dr. Ruddy was Claimant's primary care provider, but she did not treat Claimant for her psychiatric conditions. (Doc. 11-12 at 61–62). Nonetheless, even if the Court accords her the high status of a treating provider, the ALJ did not err.

Dr. Ruddy, relying on diagnoses made by Dr. Amezcua-Patino and others, stated Claimant's primary symptoms as "inability to focus, concentrate, take instruction, and follow directions" as well as "impaired processing speed and comprehension." (Doc. 11-

10 at 159–60). The opinions of the state agency psychologists contradict this opinion, and thus the ALJ did not err in discrediting Dr. Ruddy's opinion if there was substantial evidence supporting specific and legitimate reasons to do so. (*Compare* Doc. 11-10 at 159–66, *with* Doc. 11-4 at 12–13 (stating Claimant has no "understanding and memory limitations" and would "be able to focus, attend, concentrate, and persevere on simple, routine tasks over an extended period of time"), *and* Doc. 11-4 at 27–28 (same)).

Dr. Ruddy's opinion regarding Claimant's mental limitations is as inconsistent with Dr. Amezcua-Patino's notes as his own opinion is and equally unsupported by the medical evidence. *See Ellsworth-Glasman v. Berryhill*, 731 F. App'x 724, 725 (9th Cir. 2018) (holding that conflict with a treating physician's treatment notes was a specific and legitimate reason to reject another doctor's opinion); *Presley-Carrillo v. Berryhill*, 692 F. App'x 941, 944 (9th Cir. 2017) (holding the ALJ properly relied on a treating physician's "extensive treatment notes" to discredit the conflicting opinion of another doctor, even though the treating physician's opinion had been discredited). In fact, Dr. Ruddy cited a neuropsychological test showing that Claimant has "largely normal cognition with areas of inefficiency." (Doc. 11-10 at 159 (citing Doc. 11-9 at 7)). As noted, "where the evidence is susceptible to more than one rational interpretation," it is the ALJ's responsibility to determine if there is a conflict based on the medical evidence and if so, to resolve that conflict. *Hutcheson*, 2017 WL 3839956, at *7 (quoting *Andrews*, 53 F.3d at 1039–40). The ALJ did not err in finding inconsistency between Dr. Ruddy's opinion and the treatment notes and medical evidence in the record, and thus, the ALJ's decision to discount Dr. Ruddy's opinion was not in error.

Dr. Ruddy's comments regarding Claimant's mental limitations are also brief and conclusory. (Doc. 11-10 at 159–63). The Medical Disability Questionnaire she filled out focuses on physical rather than mental limitations, (*id.*), and she appeared to defer to Dr. Amezcua-Patino's opinion of Claimant's mental limitations. (Doc. 11-12 at 62 ("My understanding is that her psychiatrist is also going to be completing an evaluation. . . . I think that it is predominantly her psychiatric and mental health issues that would be

predominantly at play here.")). The ALJ's rejection of her opinion regarding Claimant's mental limitations was proper here because an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957 (citation omitted). Consequently, the conclusory nature of Dr. Ruddy's opinion is also a specific and legitimate reason to discount her opinion.

The ALJ did not err in discounting Dr. Ruddy's opinion. As such, any support for Dr. Amezcua-Patino's opinion from Dr. Ruddy's opinion does not establish the ALJ erred.

Second, the ALJ properly discounted PA Kiraly's opinion. PA Kiraly, as a physician assistant, is an "other source." 20 C.F.R. § 404.1513(d) (2017).[2] To reject her testimony, therefore, the ALJ needed only to give "germane" reasons. PA Kiraly opined that Claimant has chiefly marked, with some moderately-to-marked, mental limitations. (Doc. 11-13 at 52–53). PA Kiraly's opinion was therefore also inconsistent with the objective medical evidence, including Dr. Amezcua-Patino's treatment notes, and the opinions of the state agency psychologists, which constitute germane reasons. *Molina*, 674 F.3d at 1111–12; *Bayliss*, 427 F.3d at 1218; *Gooding v. Berryhill*, No. 5:17-CV-00565-SK, 2018 WL 6112652, at *1 (C.D. Cal. Mar. 12, 2018); *Ohlde v. Astrue*, No. 09-3104-TC, 2010 WL 4483645, at *7 (D. Or. Nov. 1, 2010). Thus, PA Kiraly's opinion does not show that the ALJ erred by rejecting Dr. Amezcua-Patino's opinion.

Claimant also argues that, because the ALJ relied in part on inconsistencies between Claimant's alleged limitations and the fact that Claimant cared for her granddaughter, his discounting of Dr. Amezcua-Patino's opinion was improper. It is true that the Ninth Circuit Court of Appeals has repeatedly cautioned that "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citation omitted), and "that a claimant need not vegetate in a dark

---

[2] 20 C.F.R. § 404.1513 was amended, and the amended version became effective on March 27, 2017. *See* 82 Fed. Reg. 5844-01, 5865 (Jan. 18, 2017). Claimant filed her disability claim on August 4, 2015, (Doc. 11-6 at 2–3; Doc. 15 at 2); thus, the version effective from September 3, 2013 to March 26, 2017 applies.

- 9 -

room" to be found disabled, *Magallanes*, 881 F.2d at 756 (internal quotation marks and citations omitted). But Ninth Circuit precedent "do[es] not prevent the ALJ from taking into account a claimant's level of activity, along with other probative evidence of disability or lack thereof." *Magallanes*, 881 F.2d at 756. Here, the ALJ did not rely purely upon Claimant's activities in discounting a medical opinion or discrediting testimony. Rather, he consistently cited Claimant's activities as a supporting reason in conjunction with medical and other evidence from the record. (Doc. 11-3 at 22–25). In other words, "the record does not suggest that the ALJ relied solely on [Claimant's activity levels] in flagrant disregard of overwhelming medical evidence to the contrary." *Magallanes*, 881 F.2d at 756. Even if the ALJ had considered Claimant's activity levels improperly, the inconsistencies between Dr. Amezcua-Patino's opinion and both his treatment notes and the objective medical evidence are, as discussed, specific and legitimate reasons to discount his opinion.

Finally, Claimant asserts that the ALJ did not properly weigh Dr. Amezcua-Patino's opinion under 20 C.F.R. § 404.1527(c)(2)–(6). Section 404.1527(c)(2)–(6) provides a list of factors for the Commissioner to consider in evaluating the weight the Commissioner should accord an opinion by a treating source. *See* 20 C.F.R. § 404.1527(c)(2)–(6). The ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." (Doc. 11-3 at 21). Consideration is all that is required. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017); *see also Kelly v. Berryhill*, 732 F. App'x 558, 562–63 & n.4 (9th Cir. 2018). The ALJ complied with 20 C.F.R. § 404.1527(c)(2)–(6).

In short, the ALJ justified giving Dr. Amezcua-Patino's opinion limited weight, as detailed above, by noting its inconsistency with his treatment notes and with the record as a whole. The ALJ did not err in discounting Dr. Amezcua-Patino's opinion.

### b. Evaluation of Residual Functional Capacity

Claimant argues next that the ALJ's limitation of Claimant in his RFC determination to simple, unskilled work does not capture her moderate limitations in concentration, persistence, or pace. The ALJ stated in his opinion, however, that his RFC assessment

reflected moderate limitations in concentration, persistence, or pace. (Doc. 11-3 at 20–21). The Ninth Circuit Court of Appeals has held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (citation omitted). Claimant argues that Dr. Dyer's records showed memory deficiencies and mental disorganization for which the ALJ did not account, but the ALJ explicitly considered Dr. Dyer's records and gave them some weight in determining Claimant's RFC. (Doc. 11-3 at 23). She also argues that the RFC assessment is inconsistent with the opinions of Dr. Amezcua-Patino, Dr. Ruddy, and PA Kiraly, but the ALJ properly gave those opinions little weight as discussed above.

The ALJ's RFC determination is supported by the opinions of state agency psychologists Steven Fair, Ph.D. and Kevin Donovan, Ph.D. in determining Claimant's RFC. (Doc. 11-3 at 25). Dr. Fair found Claimant to have, at most, some moderate limitations in concentration and persistence and opined that she was limited to simple, unskilled work. (Doc. 11-4 at 11–13). Dr. Donovan agreed. (Doc. 11-4 at 27–29). The ALJ's determination of Claimant's RFC was consistent with the restrictions identified by Dr. Fair and Dr. Donovan. Moreover, the ALJ found that the opinions of Dr. Fair and Dr. Donovan were consistent with other evidence in the record, pointing specifically to Dr. Amezcua-Patino's treatment notes. (Doc. 11-3 at 25). This finding is reasonable and will not be disturbed. *See Stubbs-Danielson*, 539 F.3d at 1173–74. The ALJ's RFC determination was therefore free of legal error and supported by substantial evidence.

### c. Reliance on the Medical-Vocational Guidelines

Claimant's final argument is that the ALJ erred in relying on the Medical-Vocational Guidelines ("the grids") rather than calling for vocational expert testimony. At step five of the disability evaluation process, the burden shifts to the Commissioner to show that a claimant can engage in gainful employment in the national economy. *See Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). The Commissioner can make this showing in

either one of two ways. The Commissioner can call a vocational expert to evaluate a hypothetical factual scenario based on the claimant's limitations and testify about "what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of 'not disabled.'" *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (citation omitted). Alternatively, the ALJ can rely on the grids to determine if a particular claimant "can perform some work that exists in 'significant numbers' in the national economy." *Id.* The ALJ may only rely on the grids "when the grids accurately and completely describe the claimant's abilities and limitations." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (citation omitted). The grids do not cover certain non-exertional limitations, such as "mental, sensory, postural, manipulative, or environmental (e.g., inability to tolerate dust or fumes) limitations." *Id.* at 1340–41 (citation omitted).

Here, Claimant argues that a vocational expert was required due to the ALJ's finding of moderate limitations in "concentration, persistence, and pace." (Doc. 15 at 23). "However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids." *Desrosiers*, 846 F.2d at 577. Rather, the ALJ must "determine if a claimant's non-exertional limitations significantly limit the range of work permitted by [her] exertional limitations." *Id.* In such a case, the grids are inapplicable, and a vocational expert is required. *Hoopai v. Astrue*, 499 F.3d 1071, 1075–76 (9th Cir. 2007); *see also Burkhart*, 856 F.2d at 1340–41 (concluding that ALJ erred in relying on the grids because ALJ found that claimant could not "perform the full range of sedentary and light work because of significant mental and manipulative nonexertional limitations"). But where non-exertional limitations do not "significantly limit[] a claimant's ability to do work beyond the [claimant's] exertional limitation[s]," an ALJ may rely on the grids. *See Hoopai*, 499 F.3d at 1076–77 (concluding that claimant's "depression was not a sufficiently severe non-exertional limitation that prohibited the ALJ's reliance on the grids" despite the fact that evidence showed "limitations [that] were moderate" as to claimant's "ability to maintain concentration, persistence and pace").

The ALJ did not err by relying on the grids. The ALJ found that the non-exertional limitations supported by the record "have little or no effect on the occupational base of unskilled work at all exertional levels." (Doc. 11-3 at 26). This finding is reasonable because, as discussed, the ALJ had already taken Claimant's mental limitations into account in limiting her to unskilled work. *See* SSR 85-15, 1985 WL 56857, at *4 ("Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work."). Claimant argues that "it is not clear that moderate limitations would not substantially erode the occupational base." (Doc. 15 at 24–25). However, as in *Hoopai*, even if evidence supports that Claimant had moderation limitations in concentration, persistence, and pace, nothing suggests that the ALJ erred in finding that such limitations were not severe enough to prohibit the ALJ from relying on the grids. *Hoopai*, 499 F.3d at 1076–77. Stated differently, the ALJ did not err in finding that Claimant's non-exertional limitations are not severe enough to preclude her from performing work that is consistent with her exertional limitations. (Doc. 11-3 at 26–27). There is substantial evidence in the record to support the ALJ's decision to rely on the grids.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.[3]

Dated this 14th day of July, 2020.

James A. Teilborg
Senior United States District Judge

---

[3] To the extent mandate is required, the judgment shall serve as the mandate.